Burglary is defined to be a breaking and (471) entering the dwelling-house of another, in the nighttime, with intent to commit a felony. To constitute the offense, the breaking and entering must combine. The common law has, in all times, regarded with peculiar tenderness the dwelling-houses of the citizens, and judges, to carry out what was considered the intention of the law, have in their adjudications of what shall be a breaking and an entry, resorted to a system of refinement which, in my opinion, is too regardless of human life. The struggle seems to have been, who should be the most ingenious in finding reasons for bringing cases within the grasp *Page 328 
of the law, rather than in finding reasons to temper its severity. The old decisions, as well as many of the modern, will, upon examination, justify the remark. The word break is one of familiar use and meaning. It means to separate by violence
the parts of any particular substance or thing. To break a house, therefore, would, in common parlance, be to break by violence any part of it. This definition was, at an early period of the history of the law upon the subject, laid aside, and a breaking was adjudged to be any violation of that mode of security which the occupier had adopted. Thus, not only the picking of a lock, a turning of a key left in it, and thereby unlocking it, but the lifting of a latch or the raising of a window, kept in its place only by its own weight, have all been gravely adjudged to be an actual breaking. 1 Russ., 2; 4 Black. Com., 224. But another species of breaking was invented by the judges, called constructive breaking. It would seem that the lifting of a latch would have been sufficiently constructive. But cases were brought before the courts in which the proprietor of a house himself removed the fastening of his door and opened it, and when so opened the trespasser entered. It was adjudged that whenever the opening of the door was procured by fraud, threats, or conspiracy, it was in law a breaking. To (472) complete the crime, however, it was necessary that the felon should enter the house. In common understanding, to enter a house is to go into it. But we are told the law, which is common sense, does not mean such an entry. But, if in his effort to get in, after having so procured the door to be opened, or while it is shut, any portion of his person, or of his limbs, enter, however small the part be, or how small the distance may be that it has been within the four walls, the burglary, so far as the entering is concerned, is complete.
Thus when thieves came to rob a house, and having, by threats, induced the owner to open the door, a contest ensued, and in the struggle one of the prisoners discharged a pistol into the house, and, in doing so, his hand was over the threshold, but no other part of his person, "by great advice" it was adjudged burglary. In another case, where in breaking a window in order to steal something in the house, the prisoner's finger went within the house, it was a sufficient entry to constitute burglary. Rex v.Davis, Russ. and Rey, 499. This was decided as late as 1823. These cases are referred to as examples of the triumph of zeal and ingenuity over common sense. In a population so dense and corrupt as that of England, such refinement and severity may be necessary. It cannot be so here. I am utterly opposed to these constructive burglaries; and whilst I *Page 329 
acknowledge the authority of adjudicated cases, and might be constrained even to follow the finger case, I cannot consent to go one step further. While I am not disposed to take one stone from the heap, I am not disposed to add one to it. In my view, the prisoner's case does not come within any decision which has fallen under my notice. It is admitted that, if the felon enter through an open door, he is not guilty of burglary; because, say the authorities, he has committed no violence in making his entry. It was the folly or negligence of the owner to leave his door open or unfastened in any way. In this (473) case the door of the house was not fastened in the usual way, or in any way, when the prisoner entered. On behalf of the State it is admitted that the breaking by the prisoner was not an actual, but a constructive, breaking. The prisoner did unquestionably procure the door to be opened by fraud. To me, however, it appears to be adding another mesh to the net to hold that his entry brought him within the scope of the cases that have gone before. The case states that, upon the noise, made, no doubt, by the prisoner, the prosecutor opened the outer door of his house, which had been fastened when he went to bed in the way described in the case. After opening the door, he was induced to advance to a fence about seventy-five yards off, where he was informed that his mother's plantation was on fire. How long this conversation continued we are not informed. On receiving the information, he returned to the house, ordered his horse, and dressed himself. He immediately started for his mother's, leaving the outer door open or unfastened. Some ten or fifteen minutes thereafter the prisoner entered the house through the unfastened door. This, in law, is not a felonious breaking and entry, and amounts only to a trespass. We have seen that it is an essential ingredient in the construction of the burglary that the security, ordinarily provided by the owner of the house, shall be violated, and, according to the authorities, it makes no difference how slight that security may be. And if the entry be made through a window which is left open, or through a door which is open or left unfastened, which is the same thing, no burglary can be committed. It is the negligence
of those to whom the law extends this extreme protection that strip them of its guardianship to the extent of taking the life of a human being. In the prisoner's case the prosecutor had ample time after returning to the house to provide for its security during his absence; and those of his family who were left behind had ample time after his departure to secure (474) the door in the way it was usually fastened.
To constitute burglary, where there is no actual, but a *Page 330 
constructive breaking, the entry must be simultaneous with the opening of the door, or follow it so immediately as to preclude the owner from the power of shutting or refastening the door before the entry. I can find no case where this was not the fact in a constructive breaking; and it is right it should be so. The penalty is too high to be exacted in favor of him who will not take the ordinary care to protect himself. The case has been aptly put — suppose the prisoner had, at 12 o'clock the preceding day, informed the prosecutor that at 12 o'clock the succeeding night his mother's house was to be robbed; and, after night, he had gone to his mother's, leaving the door open, and the prisoner had then entered; would that amount to burglary? Suppose in this case the mother's plantation had been twenty miles off, and the alarm had been given by the prisoner an hour in the night, and the prosecutor had gone to his mother's, leaving the door open, and an hour before day the prisoner had entered — could that have been a burglarious entry? Suppose, again, that Mr. McNatt, after having been induced by the false representation of the prisoner, to open the door, had retired to bed, leaving the door open, and the prisoner had then entered — could that be a burglarious entry? I think it very clear in law it would not in either of the cases supposed. The owner of the house, in each case, would by his negligence have deprived himself of the high protection provided for him, and left the crime to be punished as a misdemeanor. In the last case supposed it surely was as much his duty to close and fasten his outer door, when he retired to rest the second time, as it was when he retired the first time. It may often prove very difficult to ascertain what time elapses between the opening of the door, (475) so procured, and the entry of the prisoner; and still more difficult to fix judicially when entry is simultaneous with the opening. All I can say is that if such a length of time elapses between the acts as to enable the owner to close and secure his door, no attempt being made by the prisoner forcibly to prevent it, the prisoner will not be guilty of a burglarious entry, if the door be open or not fastened in some way when he does enter, which is the case here. I do not consider myself as traveling out of the record or the bill of exceptions. In his argument below, which is inserted in his exceptions, the prisoner's counsel insisted that, admitting the facts to be as the State claimed them to be, in law the prisoner was not guilty of burglary. It was not necessary he should ask from the court, more specifically, a charge to that effect. I agree with him. My remarks have been entirely confined to the burglarious part of the charge against the prisoner. *Page 331 
I agree with Judge Pearson, that there was error in law in the judge's charge, and for that error the judgment must be reversed and a venire denovo awarded.